IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ORFALINDA C. GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 6360 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Maria Valdez |
| Commissioner of the U.S. Social | ) | |
| Security Administration[1], | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision

of the Commissioner of the Social Security Administration (the "Administration")

denying Plaintiff Orfalinda C. Gonzalez's ("Plaintiff") claim for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The parties

have consented to the jurisdiction of the United States Magistrate Judge pursuant

to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's Motion for Summary

Judgment [Doc. No. 9] is granted, and the Commissioner's Cross-Motion for

Summary Judgment [Doc. No. 14] is denied.

## BACKGROUND

### I.    Procedural History

Plaintiff filed an application for DIB On July 18, 2011, alleging a disability

onset date of October 29, 2008 due to urinary incontinence and Crohn's disease. (R.

---

[1]Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil
Procedure 25(d).

145; 171.) Her claim was denied initially on October 26, 2011 and then upon reconsideration. (R. 106-107.) On November 19, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Lee Lewin. (R. 30-105.) She testified at the hearing and was represented by counsel. (R. 32.) Medical Expert ("ME") Sheldon J. Slodki M.D. and Vocational Expert ("VE") Ruben Luna also testified. (R. 82-104.)

On March 25, 2013, the ALJ issued a written opinion finding Plaintiff not disabled under the Act. (R. 16-25.) The Appeals Council denied her request for review, leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994). (R. 1-5.)

## II.    Medical Testimony

The Plaintiff's relevant medical history is as follows. At the time of the hearing, Plaintiff was 53 years old, had worked as a machine feeder and box maker, and had attained a high school education. (R. 37, 96-97.) In October 2008 Plaintiff consulted with urologist Anthony M. Grimaldi, D.O. regarding urinary incontinence. (R. 229, 235-250.) Later that month, Plaintiff underwent surgery consisting of a laparoscopic-assisted vaginal hysterectomy and anterior colporrhapy[2] in conjunction with a vaginal sub-urethral sling. (*Id*.) In a follow-up exam in November 2008, she indicated that her incontinence was improved. (R. 229.) Her doctor recommended that she refrain from heavy lifting and never lift

---

[2] Anterior colporrhaphy refers to the surgical repair of the vaginal wall in order to restructure the vagina. *Colporrhaphy*, Definition, Dorland's Medical Dictionary, 32 ed., 2012.

more than ten pounds, as this might compromise the integrity of the urethral sling. (*Id.*)

Plaintiff also has been treated for Crohn's disease under the care of gasteroenterologist Kevin J. Dolehide, M.D. seeing him approximately every three months since 2006. (R. 364, 369, 470-471.) Colonoscopies performed in March 2009 and June 2011 revealed diverticulosis, gastritis, and hemorrhoids. (R. 362-363, 366-368.)

In July 2011, Dr. Dolehide completed a Gastrointestinal Disorders Impairment Questionnaire indicating that Plaintiff experienced pain, fatigue, loss of appetite, and abdominal pain and cramping due to Crohn's disease, diverticulosis, and infectious colitis. (R. 369-371.) Dr. Dolehide opined that Plaintiff's primary symptoms were severe enough to constantly interfere with her attention and concentration. (R. 371-372.) Her symptoms were exacerbated by stress. (*Id.*) In an eight-hour workday, Dr. Dolehide opined that Plaintiff can occasionally lift and carry up to twenty pounds but can only sit for two hours and stand/walk up to an hour total. (R. 372-373.) He recommended that she not sit continuously in a work setting due to her urge to go the bathroom. (R. 372.) Dr. Dolehide further stated that Plaintiff requires ready access to a restroom two to three times a day for approximately thirty minutes each time, often on an urgent basis. (R. 373-374.) Dr. Dolehide estimated that, on average, Plaintiff would be absent from work more than three times a month. (R. 373.) He indicated that his findings were supported by laboratory and diagnostic tests, including the June 2011 colonoscopy, he opined that

Plaintiff is not a malingerer, and described her prognosis as "chronic disorder, lifetime illness." (R. 366-369, 372.)

Dr. Dolehide also submitted a hand-written report to the Administration in September 2011. (R. 361.) In this report, Dr. Dolehide noted that he had been treating Plaintiff since 2006 for her Crohn's disease. (*Id.*) He reported that medications decreased Plaintiff's abdominal pain, but the illness had caused her "to change her lifestyle drastically due to fear of going out in public and not having access to a bathroom," given that she "often has to use the bathroom several times in a short time frame." (*Id.*) He concluded that Plaintiff's disease was a "lifelong illness" and that she could not work full-time. (*Id.*)

In a letter dated November 5, 2012, Dr. Dolehide indicated that Plaintiff is "completely disabled" and "incapable of performing full time work." (R. 470.) His letter described Plaintiff's symptoms of chronic abdominal pain, change and loss of appetite, fatigue, and stress, to be factors that would continue to affect her daily life. (*Id.*) He heightened her ten-pound lifting limitations set after her October 2008 surgery to twenty-pounds, and reiterated her need to constantly access the restroom. *(*R. 229, 470.) Dr. Dolehide concluded by echoing his opinion from his July 2011 letter stating that Plaintiff's symptoms continue to be severe enough to constantly interfere with her attention and concentration, and that her impairments and limitations would cause her to miss more than three days of work each month. (R. 470.)

Plaintiff began seeing urogynecologist Denise Elser, M.D. in March 2011. (R. 345.) After initial testing and two follow up exams, Dr. Elser diagnosed Plaintiff with "prolapse of vaginal vault after hysterectomy." (R. 335.) She assisted in Plaintiff's second surgery, a repair of the prolapse, on June 13, 2011. (R. 359-360.)

In October 2011, medical consultant Ernst Bone, M.D. reviewed Plaintiff's medical file and completed a Physical Residual Functioning Capacity ("RFC") Assessment, reporting evidence of diverticulosis, internal hemorrhoids, and Crohn's disease. (R. 375-382.) Dr. Bone found no significant limitations that would prevent Plaintiff from performing substantial gainful activity ("SGA"). (*Id*.) Dr. Bone's assessment was affirmed by another medical consultant, Charles Wabner, M.D., in March 2012. (R. 383-385.)

On November 19, 2012, Plaintiff testified before the ALJ that she was terminated from her job after undergoing her first surgery in October 2008. (R. 49-50.) She stated that she was unable to return to work because of "the way she feels." (R. 54.) She specifically reported experiencing "a lot of discomfort" in the form of abdominal and lower back pain, which began to occur after her second surgery in July 2011. (R. 54-58.) Plaintiff revealed feeling like she had to move her bowels, without success, which would occur two to three times per day for thirty minutes. (R. 68-70.) She pointed out she could not lift more than a gallon of milk, and that her lifting restriction presented an obstacle to finding a job. (R. 54.)

In addition, Plaintiff revealed that despite medication, her Crohn's disease caused her stomach to be upset and she continued to experience constipation. (R.

61.) Plaintiff also testified to taking Metamucil for her constipation, which she said "sometimes" helped. (R. 61-62.) She testified she had not seen Dr. Dolehide in months, but saw him when she felt something was wrong. (R. 61, 74.) Plaintiff indicated she had urinary incontinence. (R. 79.) She mentioned that if she drank coffee or tea, she went to the bathroom more than five times per day. (*Id.*) Plaintiff further indicated that she experienced leakage five times a day or more. (R. 79-81.) Finally, Plaintiff indicated that her depression prevented her from working because she did not feel like doing anything, or getting out of bed. (R. 64, 70.) She testified that she was taking medication, which helped somewhat, and saw her psychologist on an as-needed basis. (R. 65-66.)

With respect to her mobility, Plaintiff reported that she might be able to walk a mile, and would take breaks by sitting "for a little while." (R. 71.) Plaintiff estimated being able to walk for twenty minutes at a time, and to sit for ten minutes or less. (R. 72-73.) She further testified she could stand for only five minutes due to pain. (R. 73.)

In describing her daily activities, Plaintiff acknowledged that she could shower and dress herself, complete household chores, do little loads of laundry, wash dishes, and sometimes make the bed. (R. 39.) She cooked breakfast, and she cooked dinner approximately twice a week. (*Id.*) She drove when she needed to, approximately once a week, to go to medical appointments or to the store. (R. 38.) She was able to ride in a car for approximately one hour to her family's campground, a location she visited approximately three times in 2012. (R. 45-46.)

Her husband made stops along the way to the campground "just to get out for a little bit." (*Id.*) At the campground, Plaintiff reported doing nothing more than sitting around the trailer and the fire. (R. 47.) She did not disclose the duration of her sitting down. (*Id.*) Finally, Plaintiff testified that she watched news on television for less than an hour, and read the newspaper. (R. 42-43.) She did not report any difficulties doing either activity. (*Id.*) She did, however, testify that she gets "depressed a lot" and that her depression makes her feel like she does not want to do anything. (R. 64.) She reported taking medication for her depression and receiving counseling about two to three times a month. (R. 65-66.)

The ALJ then asked the VE whether a hypothetical person with the same age, education, and work history as Plaintiff, and a residual functional capacity ("RFC") limiting her to unskilled light exertional work with frequent climbing of ramps and stairs; the occasional climbing of ladders, ropes, or scaffolds; and occasional crouching, and crawling, could perform Plaintiff's past work. (R. 97.) The VE indicated three light jobs that Plaintiff could perform, which included cafeteria attendant; a shipping, receiving, and routing clerk; and a packager. (R. 97-99.) The VE further testified that an individual with Plaintiff's restrictions could also perform three sedentary jobs, such as bench hand assembly, credit checker, and order clerk. (R. 99-100.) However, when asked whether any of these jobs would remain available to Plaintiff if she missed more than three days of work per month for unexcused absences, the VE reported no jobs in the national economy that allow three or more unexcused absences per month. (R. 101.) He further stated that there

were no jobs available for an individual who had to take breaks two to three times a day for thirty minutes, and that such frequent breaks would not be allowed by an employer. (R. 101-103.)

Medical Expert Sheldon J. Slodki, M.D. also testified at the hearing. (R. 82.) He reported that the record supported Plaintiff's diagnoses of internal hemorrhoids, Crohn's disease, infectious colitis, diverticulosis, urinary incontinence, pelvic pain, bladder suspension, vaginal repair, and constipation. (R. 83-84.) He opined that the lifting restriction involving Plaintiff's first surgery was temporary. (R. 85-86.) Dr. Slodki did not report seeing any restrictions regarding Plaintiff's second surgery, and instead opined that Plaintiff could do work with a twenty-pound lifting limit. (R. 87-88.) He did not find anything in the record that reflected going to the bathroom multiple times during the day. (R. 90-91.) Dr. Slodki does not evaluate psychiatric disorders, such as depression. (R. 84.)

## III.    The ALJ's Decision

In reviewing the aforementioned, the ALJ's March 25, 2013 opinion found at step one that Plaintiff had not engaged in SGA since her onset date of October 29, 2008. (R. 18.) At step two, the ALJ found that Plaintiff had the severe impairments of Crohn's disease, diverticulitis, and colitis, but concluded that her urinary incontinence and depression were non-severe because they did not cause more than minimal limitations in her abilities to perform work activities. (R. 18-19.) The ALJ indicated at step three that Plaintiff did not have an impairment or combination of impairments that, meet or medically, equals the criteria of impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. (R. 20.) Before considering step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), limiting her activity to frequently climbing ramps and stairs, and occasionally climbing ladders, ropes and scaffolds, crouching and crawling. (R. 20-23.) At step four, the ALJ went on to state that Plaintiff could not perform any past relevant work. (R. 23.) Finally, the ALJ concluded at step five that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cafeteria attendant, shipping/receiving/routing clerk, and packager. (R. 24.) Based on these findings, the ALJ found that Plaintiff was not disabled under the Act. (*Id.*)

## IV.    Additional Evidence

In her appeal to the Appeals Council, Plaintiff submitted additional evidence in her case. (R. 5, 217-228, 483-496.) Much of this additional evidence documents Plaintiff's mental health care. On April 30, 2012, Plaintiff saw family medicine specialist Dr. Neilesh Shah, M.D. for issues involving stress. (R. 387.) Dr. Shah noted Plaintiff's increased complaints of depression and "crying more often." (*Id.*) Plaintiff was tearful during the exam. (R. 388.) Dr. Shah assessed depression, and prescribed Plaintiff Sertraline (an antidepressant), ordered blood tests, and referred Plaintiff to counseling. (*Id.*)

The additional evidence also includes notes from clinical psychologist Michele Farraro, Psy.D., who began treating Plaintiff with psychotherapy beginning May

2012. (R. 473-479.) On May 21, 2012, Dr. Farraro noted that Plaintiff was "very emotional," and that she reported feeling "useless" and felt like "climbing into a hole and not coming out." (R. 475.) On September 4, 2012, Dr. Farraro noted that Plaintiff told her, "I just want to give up." (R. 477.) On September 17, 2012, Dr. Farraro noted Plaintiff was "still emotional" and "still crying." (R. 478.) In notes from a therapy appointment on November 26, 2012, Dr. Farraro described Plaintiff's depression as "severe." (R. 479.)

Also among the additional evidence was a Psychiatric/Psychological Impairment Questionnaire completed by Dr. Shah on July 17, 2013. (R. 489-496.) In the questionnaire, Dr. Shah indicated that he had been treating Plaintiff every three months for over a year. (R. 489.) He reported that Plaintiff suffered from major depressive disorder (annotated "MDD") in addition to her Crohn's disease and chronic low back pain and chronic pelvic pain from her vaginal mesh. (R. 489.) He opined that Plaintiff's was "markedly limited" in thirteen of twenty work-related mental abilities and "moderately limited" in the rest. (R. 492-494.) Dr. Shah concluded that Plaintiff was incapable of even low stress work due to her impairments and poor coping skills. (R. 495.)

The additional evidence also includes notes and assessments from gynecological specialist Sandra Culbertson, M.D., who examined Plaintiff on December 7, 2012, three weeks after her hearing. (R. 480-482.) Dr. Culbertson noted that Plaintiff experienced ongoing pelvic pain, opined that Plaintiff was unable to stand for any length of time without pain, and noted that Plaintiff also experienced

pain with sitting. (*Id.*) The record indicates that Dr. Culbertson has since continued to treat Plaintiff and has discussed further surgery. (R. 33.)

The Appeals Council indicated that it had considered this evidence in affirming the decision of the ALJ, but found that the evidence did not "provide a basis for changing the ALJ's decision." (R. 1-4.)

## DISCUSSION

### I. ALJ Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed; (2) Does the claimant have a severe impairment; (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations; (4) Is the claimant unable to perform her former occupation; and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id*. The claimant bears the burden of proof at steps

one through four. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, or resolving conflicts in evidence. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an

accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the Court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III.    Analysis

Plaintiff argues remand is required because the ALJ erred in his decision to deny her benefits when he failed to properly weigh the medical evidence; and when he improperly properly evaluated Plaintiff's credibility. Plaintiff also argues that the Appeals Council erred in its refusal to reconsider the case in light of new and material evidence.

### A.     Treating Physician Rule

Plaintiff contends that the ALJ failed to follow the treating physician rule by not appropriately weighing the opinion of her treating gastroenterologist, Dr. Dolehide. The treating physician rule directs the ALJ to give controlling weight to a treating physician's medical opinion if the opinion is both "well-supported" by objective evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); 20 C.F.R. § 404.1527(d)(2). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if the physician's opinion is not given controlling weight, the ALJ must still determine what weight the assessment does merit. *Scott*, 647 F.3d at 740. If the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the ALJ must apply the following factors to determine the proper weight to give the opinion: (1) length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. 20 C.F.R. §§ 404.1527 and 416.927.

In her opinion, the ALJ accorded "little weight" to Dr. Dolehide's July 29, 2011 questionnaire and his reports submitted on November 5, 2012. To support this, he stated that the doctor's treatment notes did not reflect the severity of

limitations listed in his opinions, and that Dr. Dolehide's opinions were based on Plaintiff's subjective complaints. (R. 23.) In *Ketelboeter v. Astrue*, 550 F.3d 620 (7th Cir. 2008), the Seventh Circuit explained that "if the treating physician's opinion is ... based *solely* on the patient's subjective complaints, the ALJ may discount it." *Id.* at 625 (emphasis added). Here, it appears the ALJ attributed little weight to Dr. Dolehide's opinion solely because he based his medical opinion on the Plaintiff's subjective complaints of urinary incontinence and bowel frequency. However the ALJ's analysis is deficient in two respects.

First although a court cannot second guess an ALJ's well-considered decision, the Court cannot definitively say the ALJ's decision was well-considered as the ALJ's decision to attribute little weight to Dr. Dolehide's testimony is not supported by substantial evidence. Dr. Dolehide is a board-certified gastroenterologist and has a subspecialty in disease of the liver, colon, and stomach. (R. 470-71.) Plaintiff has been a patient of Dr. Dolehide since 2006, and saw him for ailments including Crohn's disease and diverticulitis. (R. 463, 470-71.) Her relationship with Dr. Dolehide, compared to her other doctors, is the longest on record. (*Id.*) In 2009, Plaintiff's visits to Dr. Dolehide were regular, occurring every month and sometimes more than that. (R. 320-28, 413-14, 470-71.) In 2011 and 2012, Plaintiff saw Dr. Dolehide several times, and he noted that Plaintiff would continue to see him every three to six months to help her cope with her condition. (R. 323-24, 413-14, 463, 471.) Finally, Dr. Dolehide's progress notes were consistent, supporting his opinion that Plaintiff suffered symptoms including pelvic pain, abdominal pain, and

constipation. (R. 320, 322-323, 414.) He has repeatedly reported that Plaintiff needs frequent bathroom breaks. (*Id*.) In a handwritten report dated September 26, 2011, Dr. Dolehide noted that Plaintiff had to "use the bathroom several times in a short time frame making it difficult to work." (R. 471.) All of these factors strongly suggest that Dr. Dolehide was in the best position to opine on the Plaintiff's symptoms, however not one was explicitly considered by the ALJ in his analysis. This omission prevents the Court from being able to review whether the ALJ's decision to afford little weight was supported by substantial evidence as the ALJ cannot show he considered this important factors in his analysis.

Secondly, from a reading of the record, the ALJ's assessment of Dr. Dolehide's treatment appears to be incorrect as in addition to Plaintiff's subjective complaints, Dr. Dolehide also relied upon objective findings, including Plaintiff's colonoscopy results, which were consistent with Crohn's disease. (R. 327.) The fact that Dr. Dolehide's assessments also takes into account Plaintiff's subjective complaints, which include fatigue, loss of appetite, abdominal pain, constipation, and cramps, merely reflects good medical practice under further undermines the evidence supporting the ALJ's conclusion. *See McClinton v. Astrue,* 2012 WL 401030, No. 09 C 4814, N.D. Ill. Feb. 6, 2012 ("Almost all diagnoses require some consideration of the patient's subjective reports.") In sum, these shortcomings require remand for more explicit consideration.

**B.    Credibility**

Plaintiff next asserts that the ALJ failed to properly evaluate her credibility. First, Plaintiff contends that there was no evidence that her Crohn's disease was "well controlled," nor was there any evidence that her symptoms and limitations were inconsistent with her testimony or Dr. Dolehide's opinions.

An ALJ's credibility determination is granted substantial deference by a reviewing Court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Jen v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88).[3] The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. See *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

In this case, the ALJ found that he could not fully credit Plaintiff's allegations of constant stomach pain and constipation. (R. 21.) The ALJ noted that Plaintiff takes Metamucil, which helped her condition; and on May 2, 2012, Plaintiff

---

[3] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p, pertaining to the evaluation of symptoms in disability claims and assessing the credibility of an individual's statement. SSR 16-3p 2016 WL 1119029 at *1; see 20 C.F.R. §§ 404.1529, 416.929. The revised regulation eliminates the use of the term "credibility" from the SSR policy, and states that the subjective symptom evaluation is not an examination of an individual's character. *Id.* SSR 16-3p is simply a clarification of the Administration's interpretation of existing law. *Id.*

reported "doing well," and it was noted that her symptoms were "controlled." (R. 21-22.) The problem with the ALJ's analysis is that the ALJ's findings are not supported by the evidence in the record. Although on May 2, 2012, Plaintiff reported doing well and that her "symptoms [are] controlled," it appears to be an isolated visit. (R. 414.) Dr. Dolehide's narrative report, which was submitted after the May 2012 visit, specifically indicated that Plaintiff's prognosis remained "chronic" and that her limitations were "ongoing" and "will likely last at least 12 months." (R. 470.) Further, Dr. Dolehide indicated that Plaintiff's symptoms and limitations would likely be "lifelong," and that she was "incapable of performing full-time work." (*Id.*) Thus, Plaintiff's May 2012 visit was an isolated occurrence and did not represent Plaintiff's condition long term and the ALJ should have explicitly factored this into her analysis.

### C.  New Evidence Before the Appeals Council

In the months following the ALJ's March 2013 decision, Plaintiff submitted several additional pieces of evidence to the Appeals Council. Among these items were the May through November 2012 psychotherapy treatment notes of Dr. Farraro, the December 2012 exam notes and findings of gynecological surgery expert Dr. Culbertson, and a Psychiatric/Psychological Impairment Questionnaire completed by Dr. Shah on July 17, 2013. (R. 473-79, 480-82, 489-96.) Plaintiff now asserts that the Appeals Council erred in not accepting that evidence as new and material.

The Appeals Council, in determining whether to review a claim that has been denied by an ALJ, must evaluate additional evidence that the claimant submits, provided the evidence is both "new" and "material" and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b); *Farrell v. Astrue*, 692 F.3d 767, 770-771 (7th Cir. 2012). The Council will then grant *de novo* review of the ALJ's decision only "if it determines based on the supplemented record that the ALJ's conclusions are contrary to the weight of the evidence." *Stepp v. Colvin,* 795 F.3d 711, 721 (7th Cir. 2016.) Here, the Appeals Council indicated that it had "considered…the additional evidence… [and] found that this information does not provide a basis for changing" the ALJ's decision. (R. 1–2). The Seventh Circuit has interpreted that language to that to mean that the Appeals Council had rejected the evidence as non-qualifying under the regulations. *Farrell v.* 692 F.3d at 771. That limited question of whether proffered evidence is "new and material," and therefore qualifying for review under the regulations, is a question of law reviewable by the District Court. *Stepp,* 795 F.3d at 722; *Farrell,* 692 F.3d at 771.

The Court disagrees with the Appeals Council's finding that the proffered evidence is not "new and material." Evidence is considered "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Stepp v. Astrue,* 795 F.3d at 725; quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Evidence is considered "material" if it "creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Id.* The additional evidence must also relate to the

period on or before the date of the ALJ's decision. *Schmidt v. Barnhart,* 395 F.3d 737, 742 (2005).

The Commissioner argues that Dr. Shah's opinion is not "new" because it is derivative of treatment notes already available to the ALJ.[4] But the questionnaire provides something previously unavailable, her doctor's specific assessments of Plaintiff's work-related mental capacities. The evidence is also material because it contradicts the ALJ's opinion in several key respects. First, the notes and opinions of psychologist Dr. Farraro and primary care physician Dr. Shah present compelling evidence that Plaintiff suffered from severe depression during the year leading up to her November 19, 2012 hearing. (R. 387-88, 473-479.) Dr. Shah's treatment notes also observed her "increasing depression," which provided a basis for his questionnaire answers that averred to numerous "marked" limitations in Plaintiff's work-related mental abilities, including the abilities "to maintain attention and concentration for extended periods," to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," to "accept instructions and respond appropriately to criticism from supervisors," and ten other mental abilities. (R. 387, 492-494.)

The ALJ, in assessing the limited evidence of depression he had before him at the hearing, found that Plaintiff's depression caused no more than "minimal limitation" on her ability to perform any basic mental work activities. (R. 18-19.) He therefore did not consider her depression a "severe" impairment at step two, and did

---

[4] The same presumably does not apply to the other newly-submitted evidence, Dr. Farraro's psychological treatment notes and Dr. Culbertson's exam notes and opinion.

not account for any mental limitations in crafting his assessment of Plaintiff's RFC. (R. 18, 20.) There is a reasonable probability that a serious consideration of Dr. Shah's Questionnaire and of Dr. Farraro's treatment notes would have caused the ALJ to assess Plaintiff's depression as a severe impairment, and would have caused the inclusion at least some restrictions on her mental RFC. Therefore, the evidence is "material" for the purposes of Appeals Council review. *Stepp v. Astrue,* 795 F.3d at 725. In addition, the materials date relate to Plaintiff's condition in 2012, on or before the date of the ALJ's decision. Therefore, on remand, the Commissioner must consider the newly-submitted evidence, including the July 17, 2013 opinion of Dr. Shah, the treatment notes from Dr. Farraro, and the December 7, 2012 examination notes and opinion of Dr. Culbertson, in re-assessing the severity of Plaintiff's impairments.

The case is remanded for further for proceedings consistent with the findings discussed above. Also, the Court need not fully discuss the other errors alleged by Plaintiff. The Commissioner, however, should not assume these issues were omitted from the opinion because no error was found.

## CONCLUSION

For the foregoing reasons, Plaintiff Orfalinda C. Gonzalez's Motion for Summary Judgment [Doc. No. 9] is granted, and the Commissioner's Cross-Motion for Summary Judgment [Doc. No. 14] is denied. The Court remands this matter to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                                        **ENTERED:**

**DATE:    February 10, 2017**         _____
                                                    **HON. MARIA VALDEZ**
                                                    **United States Magistrate Judge**